IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS D. SNELL, | ) | CASE NO. 1:11 CV 1744 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| VILLAGE OF BELLVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Douglas D. Snell filed the above-captioned action in the Richland County Court of Common Pleas on April 29, 2011 against the City of Bellview, Ohio, the Bellview Police Department, Bellville Patrolman Burt Skeen, Bellville Law Director "Andrew Burton and/or John Burton," and Diane Lee Snell. He filed an Amended Complaint on August 2, 2011 asserting violations of his constitutional rights under 42 U.S.C. § 1983. The Defendants removed the action to federal court on August 19, 2011.

**Factual and Procedural Background**

Diane Lee Snell filed a Petition for a Domestic Violence Civil Protection Order against her estranged husband, Douglas Snell, on October 7, 2009 in the Richland County Court of Common Pleas. *See Snell v. Snell*, No. 09-CA-134, 2010 WL 2010899 (Ohio App. 5 Dist. May 14, 2010). A hearing was held on October 23, 2009 at which time the court granted the Petition. The court

found that Mr. Snell had engaged in a pattern of communication that contained veiled threats against Diane Snell. The protection order prohibited Mr. Snell from initiating or having contact with Diane Snell by telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person at her residence, business, place of employment, school, daycare center or child-care provider. *Id* at *2. The court did not include the Snell children as protected parties in the final order, which will remain in effect until October 7, 2014. *Id*.

Thereafter, Mr. Snell began sending letters to his children which frequently suggested Diane Snell was a sinner and was to blame for the break up of the marriage. (ECF. No. 1-6.) One letter to the children contained a "self help love book" written by Mr. Snell entitled "Love, Real Love." (ECF No. 1-6 at 21-39.) In this writing, Mr. Snell tells a story in which he uses a baseball bat to kill his wife as an illustration of the way in which "good or bad can happen because of the way we focus and react." (ECF. No. 1-6 at 36.) He goes on in the writing to claim Diane Snell:

> changed from the supportive wife and mother to loose [sic] her good focus on being positive with me as high focus in her life. She changed, lost focus on me to become less than what any of her family needed her to be. ... The children, our family, and I paid dearly for her lack of proper focus, and we will never recover from her sins against God, and us, from her lack of focus.

(ECF. No. 1-6 at 32.) It concludes with the "Moral of the Story: unless the parent(s) keep God first, their spouse second and the children third in their own line of focus, bad things will happen." (ECF No. 1-6 at 33.) In a letter written to Diane Snell, Mr. Snell asks her to "Please just pray, stop the bad against me, and be nice. Is that too much to ask?" (ECF No. 1-6 at 19.) He explains, "part of why I do what I do and it is all my choices, choices based on what is happening with you acting against me. It [is] not your fault because I make the choices but I would not make those choices if it weren't for you and what you do against me." (ECF No. 1-6 at 19.) Diane Snell brought the letters to the

Bellville Police Department on May 18, 2010. She also brought a wooden cross which she claimed one of her daughters gave to her and said, "dad wanted us to give this to you." (ECF No. 1-6 at 14.) Diane Snell reported to Patrol Officer Burt Skeen that Mr. Snell was violating the civil protection order.

Patrolman Skeen reviewed the letters, created an Incident Report and forwarded the entire package to the prosecutor's office for review. The prosecutor concluded there was probable cause to believe the protection order had been violated, and a warrant was issued for Mr. Snell's arrest. Mr. Burton was the prosecutor in the action. Mr. Snell eventually entered into an agreement whereby he pled guilty to the lesser charge of disorderly conduct.

Mr. Snell then filed this action to contest his arrest and prosecution for violation of the civil protection order. In his original Complaint filed in the Richland County Court of Common Pleas, he asserted state law claims of slander, libel, defamation, malicious prosecution, false imprisonment, neglect of duty, and violations of Ohio Revised Code § 2921.13 and 2921.44. He amended his Complaint on August 2, 2011 to add causes of action under 42 U.S.C. § 1983 for denial of his First Amendment right to Freedom of Speech, his Fourth Amendment right to be free from illegal searches and seizures, and his right to due process under the Fifth and Fourteenth Amendments. Based on the claims asserted under 42 U.S.C. § 1983 in the Amended Complaint, the Village of Bellville Defendants filed a Notice of Removal on August 19, 2011. The Defendants also filed a Motion for Judgment on the Pleadings on August 31, 2011. (ECF No. 5)

Mr. Snell objected to the removal of this action to federal court by filing a "Motion for Leave Response Countra [sic] Removal" on October 3, 2011. (ECF. No. 7-1) He asserts that neither his Complaint nor his Amended Complaint state a cause of action under federal law. He further

contends that the Notice of Removal was not timely filed and that all Defendants did not consent to removal. He requests remand of the action to state court. Mr. Snell also filed a "Motion Contra Dismissal" (ECF No. 8) on October 3, 2011 in response to the Defendants' Motion for Judgment on the Pleadings.

For the reasons set forth below, Mr. Snell's request for remand to state court (ECF No. 7-1) is **denied**. The Defendants' Motion for Judgment on the Pleadings (ECF No. 5) is **granted**.

### Standard for Removal

A Defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A civil action founded on a claim based on a federal statute may be removed regardless of the citizenship of the parties. 28 U.S.C. § 1441(b). Whenever a federal claim is joined with "one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates." 28 U.S.C. § 1441(c).

To remove a civil action from state court to federal court, the Defendants must file in the district court a Notice of Removal containing a short and plain statement of the grounds for removal, along with a copy of all pleadings and orders served upon the Defendants, within 30 days of receiving the complaint or summons, or within 30 days of receiving an amended pleading, motion, order, or "other paper" from which the removability of the action may first be ascertained. 28 U.S.C. § 1446(a), (b). A case may be remanded at any time prior to final judgment if it appears the federal court lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). A Motion to Remand the case to state court for any reason other than lack of subject matter jurisdiction must be made

within 30 days after the filing of the Notice of Removal. 28 U.S.C. § 1447(c).

## Motion for Remand

**I. Objections to Federal Subject Matter Jurisdiction**

Mr. Snell first contends that neither his Complaint nor his Amended Complaint contain a federal cause of action. In his original Complaint, he states "These actions committed by Defendant(s) were in violation of Laws of the State of Ohio, to wit but not limited to ORC 2739.01, 2921.13, 2921.44, Chapter 737, the Ohio Constitution and the Constitution of the United States." ECF No. 1-1 at 1-2. The remainder of the pleading details causes of action for defamation and malicious prosecution. There is no mention of any specific portion of the United States Constitution upon which Mr. Snell was basing a cause of action. A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Simply stating that some portion of the case was based on the Constitution of the United States would be insufficient to state a claim or establish federal question jurisdiction.

Mr. Snell, however, amended his Complaint on August 2, 2011 to add claims under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution. He contends the Defendants were incorrect in stating that these claims were asserted under 42 U.S.C. § 1983. Because the Constitution does not directly provide for damages, Mr. Snell must proceed under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations. *Sanders v. Prentice-Hall Corp. Sys*, 178 F.3d 1296 (6th Cir. 1999). As no other statutory provision appears to present an even arguably viable vehicle for the assertion of his Constitutional claims, it is reasonable to construe them as arising under 42 U.S.C. § 1983. Because asserted violations of the

-5-

United States Constitution present federal questions, this Court has subject matter jurisdiction to consider the matter, and it is removable from state court.

## II. Procedural Objections to Removal

### A. Timeliness of Removal

Mr. Snell next asserts that the Notice of Removal was not timely filed. He claims the original Complaint was filed and the Defendants were served in April 2011. He contends that there is no substantive difference between his original Complaint and his amended Complaint. He claims the Notice of Removal should have been filed 30 days after the Defendants were served with the original Complaint.

As noted above, the original Complaint did not state a federal cause of action. If the Defendants had attempted to remove the action at that point, the Court would have been compelled to remand the case to the State court. Plaintiff's amended Complaint is the first pleading which sets forth specific federal law causes of action, and it therefore presents the first opportunity for the Defendants to remove the action to federal court. The amended Complaint is dated August 2, 2011. The Notice of Removal was filed on August 19, 2011, well within the 30 day limitation.

### B. Rule of Unanimity

In addition, Mr. Snell claims that one of the Defendants, Diane Snell, did not consent to removal. The "Rule of Unanimity" requires all properly served or joined Defendants to join in the removal or to file a written consent to the removal. *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516–17 (6th Cir.2003)(citing 28 U.S.C. § 1447(c)); *Page v. City of Southfield,* 45 F.3d 128, 133–34 (6th Cir.1995)); *but see Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 201–02 (6th Cir.2004) (suggesting that technical deficiency in notice of removal can be cured by subsequent filings

indicating consent to removal). There is no indication that Diane Snell has been properly served with process in this action. The remaining Defendants have consented to removal. The Rule of Unanimity has been satisfied.

### C. Timeliness of Request for Remand

Moreover, even if Mr. Snell's objections to removal had merit, his request for remand is untimely. While lack of subject matter jurisdiction can be raised at any time, the Plaintiff has only 30 days to raise objections to the Notice of Removal on procedural grounds. 28 U.S.C. § 1447(c). Timeliness of the Notice of Removal and compliance with the Rule of Unanimity are both procedural grounds for remand. The Defendants filed the Notice of Removal on August 19, 2011. Mr. Snell filed his "Response Countra [sic] Removal" on October 3, 2011, well beyond the 30 day time period for objecting to removal. His request for remand is untimely, and the case is properly before this Court.

### Motion for Judgment on the Pleadings

The procedural standard for reviewing a Motion for Judgment on the Pleadings under Rule 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Rule 12(b)(6). *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir.2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir.1999)). The Complaint must be construed in a light most favorable to the Plaintiff, and all factual allegations must be accepted as true to determine whether the Complaint states a plausible claim for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir.2010) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

## 42 U.S.C. § 1983

### I. Parties in a Civil Rights Action

#### A. Private Party Defendant

As an initial matter, Diane Snell is not subject to suit in this civil rights action. To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. Diane Snell is not named as a state or local government official in this case. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Private parties, however, do not act under color of state law merely by

acting as complainants or witnesses in state criminal actions. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009). The allegations in the Complaint against Diane Snell are all based on her obtaining and enforcing a civil protection order. This is not considered state action for purposes of 42 U.S.C. § 1983.

### B. *Respondeat Superior*

In addition, Mr. Snell has not stated a claim against the Bellville Police Department or the Village of Bellville. The Bellville Police Department is a mere administrative unit of the City. It is not *sui juris* and therefore cannot sue or be sued. *See Hale v. Vance*, 267 F.Supp.2d 725, 737 (S.D.Ohio 2003) ("The "Police Department, being a mere arm of the City ..., is not its own entity, and is not capable of being sued."); *see also Nieves v. City of Cleveland*, 153 Fed. Appx. 349, 2005 WL 2033328 (6th Cir. Aug. 24, 2005); *Jones v. Ptl. D. Marcum*, No. C-3-00-335, 2002 WL 786572 (S.D. Ohio Mar. 11, 2002). Mr. Snell's claims against the Bellville Police Department are therefore construed against the City of Bellville.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). The Complaint contains no suggestion of a custom or policy of the City of Bellville or the Bellville

Police Department which may have resulted in a deprivation of Mr. Snell's federally protected rights.

### C. Immunity

It appears that Mr. Burton was the prosecutor in Mr. Snell's criminal case. Prosecutors are entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). A prosecutor must exercise his best professional judgment both in deciding which suits to bring and in conducting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages. *Id.* These suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into allegations of improper and malicious actions by the prosecutor. *Imbler*, 424 U.S. at 424-25; *Skinner*, No. 05-2458, 2006 WL 2661092, at *6-7. Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.2003). Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Imbler* 424 U.S. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). Immunity also reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ... judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990). In this instance, the challenged actions of Mr. Burton are all intimately associated with the judicial phase of Mr. Snell's prosecution. Consequently, Mr. Burton is entitled to absolute

immunity from damages.

**II. First Amendment**

Mr. Snell asserts he was deprived of his First Amendment right to write letters to his children. Contrary to Mr. Snell's description, his arrest was based not on his act of writing letters to his children, but on the content of the letters which was deemed threatening to Diane Snell. Threats of violence do not fall within the parameters of constitutionally protected speech under the First Amendment. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992).

Although Mr. Snell may dispute that the content of the letters was threatening, he pled guilty to and was convicted of disorderly conduct for this behavior in state court. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir.2007); *see* 28 U.S.C. § 1738; *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir.2006) ("Well-settled law directs federal courts to give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Under Ohio law, the doctrine of issue preclusion, also known as collateral estoppel, prevents the "relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies[,]" even if the causes of action differ." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (2007); *Fort Frye Teachers Ass'n v. State Emp't Relations Bd.*, 692 N.E.2d 140, 144 (1998). In this case, Mr. Snell pled guilty to the charge of disorderly conduct based on the threatening content of the letters and a judgment of conviction was entered. This Court is bound to give full faith and credit to that state court decision and accept that the content of the letters was threatening. Threats are not speech protected by the First Amendment. *R.A.V.*, 505 U.S. at 388.

Moreover, Mr. Snell cannot assert a claim in a civil rights action that would call into question the validity of his conviction or sentence, unless the conviction or sentence has been set aside. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). The holding in *Heck* applies whether he seeks injunctive, declaratory or monetary relief. *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998). Because the threatening nature of the letters is at the heart of his conviction, his civil rights claim would certainly call the validity of his conviction into question. He therefore must also allege that his conviction was set aside by either an Ohio Appellate Court, or by a federal writ of habeas corpus. There is no indication in the Complaint that either of these events has taken place. Consequently, this claim cannot proceed.

**III. Fourth Amendment**

Mr. Snell next claims Patrolman Skeen confiscated and read private letters between him and his children in violation of the Fourth Amendment. The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, ... but upon probable cause." U.S. Const. amend. IV. In assessing whether the right against unreasonable searches and seizures has been violated, the Court must consider whether the action amounts to a search or seizure for Fourth Amendment purposes, and whether it is attributable to the government. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989) ( "Before we consider whether the tests in question are reasonable under the Fourth Amendment, we must inquire whether the tests are attributable to the Government or its agents, and whether they amount to searches or seizures."). If the contested action meets both of these requirements, the Court then considers whether the search or seizure is

"unreasonable" under the Fourth Amendment. *Id.*

### A. Existence of a Search

In this case, the Court does not need to reach the question of the reasonableness of the officer's actions. The existence of a "search" is analyzed under a two-part test. First, the Court must determine whether the individual asserting the claim had a subjective expectation of privacy in the object, and whether society is willing to recognize that expectation as reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986); *Widgren v. Maple Grove Tp.,* 429 F.3d 575, 578 (6th Cir. 2005). While letters are "in the general class of effects" protected by the Fourth Amendment, if a letter is sent to another, the sender's reasonable expectation of privacy ordinarily terminates upon delivery. *United States v. King*, 55 F.3d 1193, 1195-96 (6th Cir. 1995). This is true even though the sender may have instructed the recipient to keep the letters private. *Id.*; *United States v. Williams*, 951 F.2d 853, 856 (7th Cir.1992)(test for standing is whether sender of note expected it to be returned). Mr. Snell either gave the letters to his children personally or mailed them to his children at the home of Diane Snell. Once the letters were sent, Mr. Snell's expectation of privacy in them terminated.

### B. Attributable to the Government

In addition, even if Mr. Snell had an expectation of privacy in the letters that was reasonable, the Fourth Amendment was not violated because the government acquired them through the actions of a private individual. The Fourth Amendment does not apply to searches or seizures by private persons. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Rather, it "proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985).

Once a private search is conducted, the government's subsequent use of the information obtained in the private search does not implicate the Fourth Amendment as long as the government's use does not exceed the scope of the private search. *Jacobsen*, 466 U.S. at 116-117. Diane Snell gave the letters to Patrolman Skeen. There is no suggestion in the Complaint that she was acting as an agent of the City with its knowledge when she obtained the letters. The Defendant did not violate Mr. Snell's Fourth Amendment rights.

**IV. Due Process**

Finally, Mr. Snell claims Patrolman Skeen denied him due process by including statements Diane Snell made concerning his history of violent crime in the police report. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.

A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide the opportunity to be heard in a meaningful manner before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996); *see Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983). The goal is to minimize the risk of erroneous deprivation and to assure fairness in the decision-making process. *Howard*, 82 F.3d at 1349. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscience," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

### A. Procedural Due Process

As the first step in any due process inquiry, Mr. Snell must show he has a protected property interest in having a completely accurate police report. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Citizens are not entitled by the Due Process Clause to an error-free criminal investigation. *See Baker v. McCallan*, 443 U.S. 137, 145 (1979). Mr. Snell has not alleged any facts to suggest he was deprived of a property interest.

Furthermore, the range of interests protected by procedural due process is not without limits. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). A protected property interest generally must be more than *de minimis*. *Kennedy v. City Of Cincinnati*, 595 F.3d 327, 335 (6th Cir. 2010); *see, e.g., Laney v. Farley*, 501 F.3d 577, 584 (6th Cir.2007) (finding "a one day in-school suspension to be a *de minimis* deprivation"); *Gillard v. Norris*, 857 F.2d 1095, 1098 (6th Cir.1988) (finding a police officer's three-day suspension from work to be a *de minimis* deprivation of property not deserving

of due process protection). Here, even if Mr. Snell had a property interest in an error free police report, the nature of that interest is *de minimis* and would not trigger due process protection.

### B. Substantive Due Process

Mr. Snell also fails to state a claim for denial of substantive due process. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Id.* at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.* There is no fundamental right at stake in this case, and the Officer's inclusion of the victim's statements about Mr. Snell's alleged history of violence is not an action that "shocks the conscience." There are no allegations in the Complaint that suggest Mr. Snell may have been denied substantive due process.

## State Law Claims

### I. Defamation, Slander and Libel

In addition, to his claims under federal law, Mr. Snell asserts claims under state tort law for defamation, slander and libel based on statements that were included in the police report. Defamation is a "false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business." *Mawaldi*

*v. St. Elizabeth Health Center*, 381 F. Supp.2d 675, 688 (N.D. Ohio 2005). Under Ohio law, a plaintiff asserting a defamation claim must allege: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher, (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp.2d 849 (N.D. Ohio 2003) (citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591 (1992)). Written defamation is known as libel; spoken defamation is known as slander. *Mawaldi*, 381 F. Supp.2d at 688.

Once this prima facie case is established, the Defendant may avoid liability by invoking various defenses, including that of qualified or conditional privilege. A qualified privilege is said to protect communications made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty if such communication is made to a person having a corresponding interest or duty. *Mosley v. Evans,* 630 N.E.2d 75, 77 (Ohio App. 11 Dist.1993). This privilege even applies to statements containing matter which, without this privilege, would be actionable, and to situations in which the duty to communicate is not a legal one, "but only a moral or social duty of imperfect obligation." *Id.* To establish this privilege, a Defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties. *Id.* If the Defendant establishes the defense of qualified privilege, the Plaintiff may not recover for defamation unless he can present clear and convincing evidence that the defamatory statement was made with actual malice. *Jacobs v. Frank*, 60 Ohio St.3d 111, 116 (1991). In a qualified privilege case, 'actual

-17-

malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. *Id.*

As an initial matter, Mr. Snell does not clearly indicate which information in the police report he considers to be defamatory. To the extent he is referring to the Officer's statement that "it is apparent [Mr. Snell] is making 'veiled threats,'" his claim is without merit. As set forth above, Mr. Snell pled guilty to disorderly conduct based on this behavior. Mr. Snell is collaterally estopped from litigating this issue again. *See O'Nesti*, 862 N.E.2d at 806; *Fort Frye Teachers Ass'n*, 692 N.E.2d at 144.

To the extent Mr. Snell contends the statements concerning his past history of violence are defamatory, he also fails to state a claim. The qualified privilege applies to the alleged defamatory information that is supplied to law enforcement authorities. *Atkinson v. Stop-N-Go Foods, Inc.*, 614 N.E.2d 784, 786 (Ohio App. 2 Dist.1992); *Black v. Cleveland Police Dept.*, 644 N.E.2d 682, 684-686 (Ohio App. 8 Dist.1994). The privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. *Jacobs*, 60 Ohio St.3d at 116. The Complaint contains no allegations reasonably suggesting the officer acted with the requisite state of mind.

## II. False Imprisonment and Malicious Prosecution

Mr. Snell next asserts claims of false imprisonment and malicious prosecution. Both claims require proof of similar elements. To state a claim for false imprisonment, Mr. Snell must show that the Defendant intentionally confined him "without lawful justification." *Evans v. Smith*, 97 Ohio App.3d 59, 70 (1994). An arrest warrant issued by a court is a complete defense to an action for false arrest or imprisonment "unless utterly void." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005). To state a claim for malicious prosecution, Mr. Snell must allege as

elements of the cause of action that he was arrested without probable cause, and that the prosecution was terminated in his favor. *Swiecicki v. Delgado,* 463 F .3d 489, 503 (6th Cir.2006). Not only was a warrant issued for Mr. Snell's arrest, but the prosecution did not terminate in his favor because he pled guilty to disorderly conduct. Both of these claims are without merit and are dismissed.

**III. State Criminal Statutes**

Finally, Mr. Snell asserts causes of action under Ohio Revised Code §§2921.13, and 2921.44. Both of these statutes pertain to a criminal offenses. There is no suggestion that they provide a civil complainant with a private right of action. *See Lewis v. J.E. Wiggins & Co.,* Nos. 04AP-469, 04AP-544, 04AP-668, 2004 WL 2895960, 9 (Ohio App. 10 Dist. Dec. 14, 2004)(finding no private right of action in tax evasion criminal statute).

### Conclusion

Accordingly, Mr. Snell's request for remand in his "Motion for Leave Response Countra [sic] Removal" (ECF. No. 7-1) is denied. The Defendants' Motion for Judgment on the Pleadings (ECF No. 5) is granted, and this action is dismissed. The court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: October 28, 2011

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.